## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| **HUMCO HOLDING GROUP, INC.,** | |
| **Plaintiff,** | Civil Action Nº _____ |
| **V.** | **ORIGINAL COMPLAINT** |
| **HARCROS CHEMICAL, INC.; RIERDEN CHEMICAL & TRADING COMPANY; OAKLEY TRANSPORT, INC.; AND OWENSBORO GRAIN BIO BASED PRODUCTS LLC** | **JURY DEMANDED** |
| **Defendants** | |

PLAINTIFF, HUMCO HOLDING GROUP, INC. (hereinafter "Humco"), files its Original Complaint against DEFENDANTS HARCROS CHEMICAL, INC.; RIERDEN CHEMICAL & TRADING COMPANY; OAKLEY TRANSPORT, INC.; AND OWENSBORO GRAIN BIO BASED PRODUCTS LLC, (hereinafter collectively "Defendants"), and upon information and belief, alleges the following:

## PARTIES

1.     Humco is a Texas corporation with its principal place of business in Bowie County, Texas, which is within the Eastern District of Texas, Texarkana Division.

2.     Harcros Chemicals, Inc., (hereinafter "Harcros") is a foreign corporation with its principal place of business in Kansas City, Kansas.  Harcros conducts business within the State of Texas and may be served through its registered agent within the State of Texas: C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

3.     Rierden Chemical & Trading Company (hereinafter "Rierden") is a foreign entity with its principal place of business in Libertyville, Illinois.  Rierden conducts business within the State of Texas, but it is not registered with the State of Texas.  Rierden may be served through the Texas Secretary of State: Texas Secretary of State, Service or Process, P.O. Box 12079, Austin, Texas 78711-

2079, with Rierden's address for service as: Rierden Chemical & Trading Company, 115 W Church St., Libertyville, IL 60048-2149.

4.     Oakley Transport, Inc., (hereinafter "Oakley") is a foreign corporation with its principal place of business in Lake Wales, Florida.  Oakley conducts business within the State of Texas and may be served through its registered agent within the State of Texas: National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

5.     Owensboro Grain Bio Based Products LLC, (hereinafter "Owensboro") is a foreign entity with its principal place of business in Owensboro, Kentucky.  Owensboro conducts business within the State of Texas, but it is not registered to do business in the State of Texas.  Owensboro may be served through the Texas Secretary of State: Texas Secretary of State, Service or Process, P.O. Box 12079, Austin, Texas 78711-2079, with Owensboro's address for service as 822 East 2nd Street, Owensboro, KY 42303.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse and, as set forth below, the amount in controversy exceeds $75,000 exclusive of costs and interest.

7.     This Court has general and specific personal jurisdiction over Defendants as their contacts in this state are continuous and systematic, and the underlying acts and injuries upon which this case is based were specifically directed into Texas and the actions upon which this suit are based substantially occurred within the State of Texas.

8.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b)(1)-(3) in that each of the Defendants is deemed a resident of this judicial district by virtue of it being subject to personal jurisdiction within this district; and a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred within this district.

## SUMMARY OF THE CASE

9.      Humco brings this action against Defendants for breach of contract, breach of warranties, negligence, and money had and received relating to Harcros' bulk sale to Humco of approximately 4,251 gallons of Glycerin USP tainted with microbial contamination.  Humco contracted with Harcros for the purchase of Glycerin USP.   Upon information and belief, Harcros, through Rierden, purchased the contaminated Glycerin from the manufacturer, Owensboro.  Harcros, through Rierden, contracted with Oakley for the delivery of the contaminated Glycerin to Humco. Unbeknownst to Humco, the contaminated Glycerin was used in Humco's manufacturing and detected at the end stage of production.  Once detected, Humco's investigation concluded that the contaminated Glycerin USP came from the Defendants.   Humco has made demand upon the Defendants, and Defendants have failed to tender monies for the damages caused to Humco.  As a result of Defendants' actions, Defendants have proximately caused Humco to suffer monetary damages from the following occurrences: (a) loss of finished product and lost sales, (b) supervision of destruction and destruction of contaminated Glycerin and products containing contaminated Glycerin, (c) repurchase of Glycerin for production, (d) clean-up of tanker and equipment, (e) expense for testing and handling, (e) necessary rentals, and (f) and other damages/expenses associated with Defendants' actions.

## STATEMENT OF FACTS

10.      Founded in 1872, Humco develops, manufactures and markets innovative pharmaceuticals, high-quality over-the-counter medicines, bulk drug substances, and provides products to major chains, drug wholesalers, mass retailers, independent pharmacies, and other pharmaceutical companies.   At its facilities in Texarkana, Humco operates a manufacturing facility and a manufacturing support testing laboratory.

11.      On August 24, 2018, Humco submitted a Purchase Order ("PO") to Harcros for the purchase of 4,500 gallons of Glycerin USP for delivery on September 5, 2018.  *See* Exhibit A.  Harcros

is a distributer of Glycerin USP.  Humco's PO specifically incorporated Humco's "standard terms and conditions without change or modification as posted on Humco's website (www.humco.com)."  *Id.* Humco's standard terms expressly incorporated into the PO are attached hereto as Exhibit B.

12.  Humco's standard terms and conditions expressly provide, "Acceptance of this offer by Seller should be made by (a) executing and returning the acknowledgement copy, or (b) delivering any of the goods ordered herein or (c) rendering any of the services ordered herein."  *See* Exhibit B, ¶ 1. Further, Humco's standard terms and conditions stated, "The terms of this Section 1 may not be changed, altered, modified or superceded by parol or extrinsic evidence or by conduct or course of dealing by or between the Buyer and Seller."  *Id.*

13.  On August 27, 2018, Harcros expressly acknowledged receipt of Humco's August 24, 2018, PO, and indicated it would be processed.  *See* Exhibit C, p. 3.  On that same date, Harcros further acknowledged Humco's PO and indicated the price had actually gone down on the product.  *Id.,* p. 1. Harcros neither suggested nor made any other modifications to the terms of the PO.  Humco acknowledge this price changed, and the contract was formed.  *Id.*  Accordingly, the contract for the purchase and sale of the Glycerin USP between Humco was formed and entered into on August 24, 2018, with only the terms of the Humco PO, Humco's standard terms, and the price terms reflected in the acknowledgement emails.

14.  Upon information and belief, Harcros contracted with Rierden, who is also a distributer of Glycerin USP, to fill the PO between Humco and Harcros and for the delivery of the ordered Glycerin USP to Humco.  Upon information and belief, Rierden purchased the Glycerin USP from the manufacturer, Owensboro, and further contracted with Oakley for the transport of the Glycerin USP to Humco.

15.  On September 5, 2018, Harcros, through Rierden, Owensboro, and Oakley delivered the Glycerin USP to Humco.  Unbeknownst to Humco, the Glycerin USP delivered by Defendants was

tainted with a microbial contamination.

16.     Upon arrival of Defendants' tanker truck filled with the contaminated Glycerine USP, Humco personnel took and preserved a sample of the Glycerine USP.  In addition, Humco personnel performed an analysis of the Glycerine USP, which was recognized in the industry and routinely administered by Humco prior to taking delivery of any chemical.  Humco's analysis of the Glycerine USP found that the Glycerine USP complied with its specifications for the purchase.  Unfortunately, the recognized testing lacked the capability to detect the microbial contaminate.

17.     With the shipment of the Glycerine USP, Defendants provided to Humco a Certificate of Analysis regarding the quality of the Glycerine USP.  While the results of the Certificate of Analysis complied with Humco's specification for the purchase of the Glycerine USP, the report provided by Defendants did not identify any contaminant contained in the Glycerine USP.

18.     Following these procedures, Humco took possession of approximately 4,251 gallons of Glycerine USP it purchased from Harcros and delivered by Defendants.

19.     Humco paid Harcros $29,956.50 for the approximate 4,251 gallons of Glycerine USP, which was tainted with microbial contamination.

20.     From the Glycerine USP Humco purchased from Harcros, Humco manufactured finished products.  After the manufacturing process, Humco's final inspections revealed the presence of microbial contamination.  Tracing the microbial contamination back through the manufacturing process and ultimately to the tank and hoses used to fill the tank in which the subject Glycerine USP was stored, Humco was able to definitively determine that the contamination came from the Defendants' delivery of the Glycerine USP to Humco.  Because Humco had retained a sample of the Glycerine USP it originally acquired from the Defendants, it was able to detect the microbial contamination in the Defendants' Glycerine USP.  In addition, Humco had maintained a sample from its holding tank obtained prior to commingling the Defendants' Glycerine USP with the Glycerine in the tank, and

because that sample was negative for microbial contamination, Humco was able to determine that the Defendants' Glycerine USP was the source of the contamination.

21.     On September 24, 2018, Humco notified Rierden in writing of the contamination of the Glycerine USP, and Rierden acknowledged receipt of the notification.

22.     On or about October 2, 2018, independent testing confirmed the presence of microbial contamination in the sample of the Defendants' Glycerine USP.

23.     Due to the contamination of Defendants' Glycerine USP, Humco was forced to destroy the finished products it had made; it lost sales and business on the destroyed finished products; it had to repurchase Glycerine USP to fill its contractual orders; and it undertook labor and expense for testing, cleaning its tanks and equipment, and discarding contaminated material.   Further, as a result of Defendants' contaminated Glycerine USP, Humco was forced to destroy the bulk Glycerine which had previously been in the tank prior to delivery of the contaminated Glycerine USP.   Accordingly, Humco was damaged as to the entire volume of the Glycerine USP delivered by Defendants and the remaining bulk Glycerine in its tanks.   All told, Humco has suffered damages in excess of $350,000 due solely to Defendants' delivery of Glycerine USP tainted with microbial contamination.

24.     On November 27, 2018, Humco notified in writing and made demand upon Defendants for damages in excess of $350,000 and for losses Defendants had caused Humco as a result of the contaminated Glycerine USP.   Defendants did not comply with the demand within thirty (30) days.

## CAUSES OF ACTION

### I.  Breach of Contract

25.     Humco incorporates herein the preceding allegations as if restated in full.

26.     On August 27, 2018, Humco and Harcros entered in a contract for the purchase of 4,500 gallons of Glycerin USP, and for delivery on September 5, 2018.   *See* Exhibits A-C.   Thereafter, Harcros contracted with or through Rierden and the remaining Defendants for the purchase and

delivery of the Glycerine USP to Humco.

27.    Prior to Humco taking possession of the Glycerine USP on September 5, 2018, and through Defendants' actions and/or omissions, Defendants caused to be shipped to Humco the Glycerine USP which was corrupted with microbial contamination.

28.    As a result of the contaminated Glycerine USP, Harcros breached its contract with Humco, and Harcros is liable to Humco for Humco's damages.

29.    As a direct and proximate result of Harcros' breach of contract, Humco has suffered damages in an amount in excess of $350,000.

30.    On or about November 27, 2018, Humco provided additional, written notice and made demand upon Defendants for damages in excess of $350,000 and for losses Defendants had caused Humco as a result of the contaminated Glycerine USP.  Defendants did not comply with the demand within thirty (30) days.  Specifically, Harcros did not tender the amount owed within thirty (30) days after the claim was presented.  As a direct and proximate result of Harcros' breach of contract, it was necessary for Humco to retain legal counsel to seek recovery of Humco's damages.  Pursuant to Texas Civil Practice & Remedies Code § 38.002, Humco is entitled to reasonable and necessary attorney fees.

31.    All conditions precedent to Humco's claims for relief have been performed or have occurred.

## II.  Breach of Express Warranties

32.    Humco incorporates herein the preceding allegations as if restated in full.

33.    On August 27, 2018, Humco and Harcros entered in a contract for the purchase of 4,500 gallons of Glycerin USP, and for delivery on September 5, 2018.  *See* Exhibits A-C.   Thereafter, Harcros contracted with or through Rierden and the remaining Defendants for the purchase and delivery of the Glycerine USP to Humco.

34.    Defendants warranted to Humco that the Glycerine USP delivered and sold to Humco

was "Glycerin[], USP (Excipient/Food Use)" and with the properties expressed in the Certificate of Analysis.  *See* Exhibit D.  Defendants expressly warranted to Humco that the Glycerine USP they delivered and sold to Humco was unadulterated.  *See* Exhibit D.

35.     Further as to Harcros, it expressly warranted by the terms of the contract that the Glycerine USP was "free from defects in material and workmanship and will, to the extent not manufactured pursuant to detailed designs furnished by Buyer, be free from defect in design and fit for the intended purposes[.]"  *See* Exhibit B, ¶ 5b.

36.     The Glycerine USP delivered and sold to Humco was not as expressly warranted because it was tainted with microbial contamination.

37.     Defendants breached their expressed warranties made to Humco.

38.     No express warranties were excluded, modified, or limited.

39.     As a direct and proximate result of Defendants' breach of express warranties, Humco has suffered damages in an amount in excess of $350,000.

40.     On or about November 27, 2018, Humco provided additional, written notice and made demand upon Defendants for damages in excess of $350,000 and for losses Defendants had caused Humco as a result of the contaminated Glycerine USP.  Defendants did not tender the amount owed within thirty (30) days after the claim was presented.  As a direct and proximate result of Defendants' breach of express warranties, it was necessary for Humco to retain legal counsel to seek recovery of Humco's damages.  Pursuant to Texas Civil Practice & Remedies Code § 38.002, Humco is entitled to reasonable and necessary attorney fees.

41.     All conditions precedent to Humco's claims for relief have been performed or have occurred.

### III.  Breach of Implied Warranties

42.     Humco incorporates herein the preceding allegations as if restated in full.

43.     On August 27, 2018, Humco and Harcros entered in a contract for the purchase of 4,500 gallons of Glycerin USP, and for delivery on September 5, 2018.  *See* Exhibits A-C.  Thereafter, Harcros contracted with or through Rierden and the remaining Defendants for the purchase and delivery of the Glycerine USP to Humco.

44.     An implied warranty of merchantability and usage of trade existed as to the Glycerine USP delivered and sold to Humco.

45.     However, due to the microbial contamination, the Glycerine USP delivered and sold to Humco by Defendants (a) would not have passed without objection in the trade under the contract description, (b) was not fit for the ordinary purpose for which the Glycerine USP was used and to be used, (c) did not run, within the variations permitted by the agreement, of even kind and quality and within each unit and among all units involved, and/or (d) did not conform to the promises or affirmations of fact made on Defendants' order confirmation, bill of lading, and Certificate of Analysis.

46.     An implied warranty of fitness for a particular purpose existed as to the Glycerine USP which Defendants delivered and sold to Humco.

47.     Humco ordered a particular grade of Glycerine USP and to be defect free from Harcros, and Harcros confirmed a particular grade of Glycerine USP and to be defect free within the contract. At the time of the contract, Harcros had reason to know that the Glycerine USP would be used in Humco's products made for certain applications intolerable for microbial contamination, that Humco had ordered a particular grade of Glycerine USP and to be defect free, and that Humco expected Harcros to furnish a suitable grade of the requested Glycerine USP.  Thereafter, Harcros contracted with or through Rierden and the remaining Defendants for the purchase and delivery of the Glycerine USP to Humco.

48.     Due to the microbial contamination, the Glycerine USP delivered and sold to Humco by Defendants was not furnished in a condition suitable for the particular purpose for which the Glycerine

USP was purchased—namely the production of Humco's products.

49.     Defendants breached their implied warranties.

50.     No implied warranties were excluded, modified, or limited.

51.     As a direct and proximate result of Defendants' breach of implied warranties, Humco has suffered damages in an amount in excess of $350,000.

52.     On or about November 27, 2018, Humco provided additional, written notice and made demand upon Defendants for damages in excess of $350,000 and for losses Defendants had caused Humco as a result of the contaminated Glycerine USP.  Defendants did not tender the amount owed within thirty (30) days after the claim was presented.  As a direct and proximate result of Defendants' breach of implied warranties, it was necessary for Humco to retain legal counsel to seek recovery of Humco's damages.  Pursuant to Texas Civil Practice & Remedies Code § 38.002, Humco is entitled to reasonable and necessary attorney fees.

53.     All conditions precedent to Humco's claims for relief have been performed or have occurred.

## IV.  Negligence

54.     Humco incorporates herein the preceding allegations as if restated in full.

55.     Defendants owed Humco a duty to provide safe, microbial free Glycerine USP.

56.     Defendants were negligent in their actions for failure to prevent commingling of material, failure to properly washout the tank, failure to properly test materials, or other acts or omissions which allowed the contamination to occur.

57.     As a direct and proximate result of Defendants' negligence, Humco has been damaged in an amount in excess of $350,000.

## V. Money Had And Received

58.     Humco incorporates herein the preceding allegations as if restated in full.

59.    Harcros sold to Humco contaminated Glycerine USP when Humco paid $29,956.50 for unadulterated Glycerine USP.

60.    As result of the sale of contaminated Glycerine USP to Humco, Harcros possesses money which in equity and good conscience belongs to Humco—thereby causing Humco damages.

## JURY DEMANDED

61.    Pursuant to FED. R. CIV. P. Rule 38, Humco demands a jury on any issue triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Humco respectfully requests judgment be entered against Defendants, and that the Court order and award the following:

1.  Judgement against Defendants;

2.  Actual damages to Humco;

3.  Prejudgment and postjudgment interest;

4.  Court costs;

5.  Attorney fees;

6.  All other relief to which Humco is entitled.

Respectfully submitted,

/s/ *Sean F. Rommel*_____
Sean F. Rommel
Tex. Bar No. 24011612
srommel@wylyrommel.com
James C. Wyly
Tex. Bar No. 22100050
jwyly@wylyrommel.com
**WYLY~ROMMEL, PLLC**
4004 Texas Boulevard
Texarkana, Texas 75503
(903) 334-8646 (Telephone)
(903) 334-8645 (Fax)

ATTORNEYS FOR PLAINTIFF